## WABASH R. CO. v. STANSBERRY.

(Circuit Court of Appeals, Eighth Circuit.   September 2, 1912.)

### No. 3,683.

MASTER AND SERVANT (§ 288*)—INJURIES TO SERVANT—SAFETY APPLIANCES—
GRABIRONS—DINING CAR.

  Plaintiff fell and was injured while returning from the roof of a dining car, where he had gone to fill the water tank in performance of his duty. It had been the custom to spot the car with the front end near a hydrant, so plaintiff, in climbing to the roof, could use a ventilator to steady himself; but for two weeks prior to the accident the car had been left so that the end where plaintiff was accustomed to ascend was so near a toolhouse that he could not place his ladder there, during which time he was in the habit of placing it in the middle of the car, where there was nothing to take hold of. He had complained of this to his foreman, who promised to have the car spotted and remedied, so that it would be safer. *Held* that, since the placing of a handhold at the middle of the car would have been a new construction and of no permanent use on the car, plaintiff was not justified in believing that grabirons would be placed on the roof for his benefit, and that the foreman's promise did not relieve him of the assumption of the risk as a matter of law.

  [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*

  Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

  Hook, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Action by Clyde Stansberry against the Wabash Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

William McNett, of Ottumwa, Iowa (J. L. Minnis, of St. Louis, Mo., and Walter McNett, of Ottumwa, Iowa, on the brief), for plaintiff in error.

C. F. Howell, of Centerville, Iowa (C. II. Elgin, of Centerville, Iowa, and W. H. C. Jacques, of Ottumwa, Iowa, on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and WILLARD, District Judge.

WILLARD, District Judge. Stansberry, the defendant in error, plaintiff below, was employed by the Wabash Railroad Company, plaintiff in error, at Moulton, Iowa. Among his duties was that of putting, every morning, water and ice into a dining car. This car arrived at Moulton about 9 o'clock at night and was placed on a side track near a hydrant. It was taken away next morning about 7, and it was Stansberry's duty to place the ice and water in it just before it left. He did this by going onto the top of the car by means of a portable ladder which was kept at Moulton. For several months the car had been stopped near the hydrant so that Stansberry

could place his ladder at the end of the car where the tank was, and in going up and down he made use of a swinging ventilator over the cooking room to hold to and steady himself.

For about two weeks before March 21, 1909, the day of the accident, the car had been left so that the end of it where he had been accustomed to ascend was near a toolhouse, so near that he could not place his ladder there, and during that time he had been in the habit of placing it about the middle of the car, where there was no ventilator nor grabiron, nor anything to take hold of. He had, however, every day for two weeks ascended in this way without injury, but on the morning of March 21st, in attempting to come down he slipped, fell off the car and broke his leg and ankle.

[1] In his complaint the plaintiff charged that the defendant was negligent in not providing handholds or grabirons upon the roof of the car. He knew the condition of the car in this respect, and the court charged the jury that he assumed the risk of this defective construction, unless he was relieved therefrom by a promise, claimed to have been made by Pierson, the foreman, at Moulton, to remedy this defective condition, and his reliance thereon. The evidence relating to the promise is as follows:

"Q. Had you talked to anybody in authority about the conditions that had arisen there after they adopted the new place for spotting the car? (The answer to this question was stricken out.) Q. Did you make some kind of a protest or complaint to somebody? Answer yes or no. A. Yes, sir. Q. Who to? A. To my boss. Q. Mr. Pierson? A. Yes, sir. Q. What did you say to him in the way of protest or complaint? A. I made a protest that it was dangerous to go on top. There was nothing to hold to, and the ladder wasn't long enough to give me any protection to get hold of it and get down off of the car. Q. What, if anything, did you say about the handholds, if anything? A. There wasn't any on the car at all. Q. What did you say to Mr. Pierson, complaining about there being no handholds? A. I told him there ought to be something there for me to hold to. Q. Go ahead and finish the conversation. A. I had protested that it was dangerous; that I ought to have something there to hold to. Q. What did he say about the question of remedying? A. He said he would have this car spotted and remedied, so it would be safer. Q. You stated you complained to him about the ladder and handholds. What did he say as to what he would do in the way of remedying the things you complained of? A. He said he would see to it. Q. Did you believe him? A. I did; yes, sir. Q. Did you rely on him? A. I did. Q. But for the fact, believing and relying on what the boss said, would you have continued work under those conditions? A. That was my intentions to quit. Q. If he had not what? A. If it had not been fixed. Q. Did you say anything to Pierson about whether you would quit or not? A. I had talked with him about it."

According to Stansberry, the necessity for grabirons arose at this time, because the car was so left that he could not mount at the end where the tank was and where the ventilator answered the purpose of a grabiron. His idea must have been that the grabiron should be placed somewhere near the middle of the car, some distance from the tank, or that there should be a series of irons running the whole length of the car, to suit the different places where the ladder would be located with reference to the toolhouse, according as the car was stopped nearer to or further from the house. Does this evidence show a promise on the part of Pierson to place handholds along the length of the top of the car, or to place one in the

middle of the car? Does it show that Stansberry, as a reasonable man, could have believed that Pierson intended to make any such promise? The toolhouse extended for only from 25 to 30 feet on the track. By moving the car that distance to the south, Stansberry could have ascended in the usual place, and there would have been no necessity for grabirons. The placing of a handhold at the middle of the car would have been a new construction. It would have been of no·permanent use on the car. It would be near neither one of the openings on the roof. It would never be of service, except when the car was left in this particular place. The need of it would entirely disappear if the car were placed 30 feet farther south, something which, so far as the evidence shows, could have been easily done, for there is nothing to indicate that it was necessary to leave it by the side of the toolhouse. Under these circumstances, it is apparent that the evidence quoted did not justify Stansberry as a reasonable man in believing that grabirons would be placed upon the roof of the car.

Whether or not this evidence shows a promise to have the car placed every morning in some other position, it is not necessary to inquire, for in any event the matter of grabirons should have been entirely eliminated from the case. This the court did not do. It left to the jury to say whether a reasonably prudent man would have placed handholds and grabirons on the top of the car. To this part of the charge the defendant excepted.

The court also left to the jury to say whether the promise of Pierson relieved Stansberry from the assumption of the risk caused by the want of grabirons. To this part of the charge also the defendant excepted.

For this error there must be a new trial. All of the other questions in the case we pass by. We decide nothing as to the charge of negligence based on a defective ladder, nor do we make any ruling upon the question as to whether or not Pierson was the proper person to whom complaint should be made.

The judgment of the court below is reversed, and the case remanded for a new trial.

HOOK, Circuit Judge (dissenting). It was dangerous for the plaintiff to mount and do his work about the sloping roof of the dining car, made slippery by the weather, without something for his hands to lay hold of. The car was being so placed on the track that he could not use the steadying devices at the end. The ladder furnished him was not suitable. His complaint to his superior quite naturally embraced the entire situation which produced the danger, through his lawyer in pleading divided it into separate conditions of negligence. But what the plaintiff was entitled to, and what he asked for, was, to use the words of his testimony, "something there to hold to," and in aid of substantial justice the situation should be regarded as an entirety. I hardly think it just to say he asked his superior for permanent "grabirons and handholds" at the place where he had to mount the car, much less such fixtures along the entire side. If putting the car at the particular place on the track was

but temporary, the devices could as well have been temporary. He was entitled to something to lay hold of, it was the duty of the company to furnish it, he asked and was promised it, and pending the fulfillment of the promise he fell and was injured. After all is said, that is the case in substance.